CUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YOK
_____X

| | |
|---|---|
| Frantz Moleon on his own behalf and on behalf of similarly situated former and current employees, | INDEX NO. 21 cv 1398 |
| Plaintiffs, | COMPLAINT |
| -against- | COLLECTIVE ERISA ACTION |
| Fred Alston as President of Garage Employees Local 272 *affil'd* International Brotherhood of Teamsters, SP Plus Corporation, Margarita Lopez, Local 272 John Doe 1, Kent Security Of New York, Inc. and Ronald Manning. | JURY TRIAL DEMANDED |
| Defendants. | |

_____X

Plaintiff Frantz Moleon on his own behalf and on behalf of similarly situated former and current employees by and through their attorney Susan Ghim allege against all named Defendants as follows:

PRELIMINARY STATEMENT

Plaintiff Frantz Moleon ("Plaintiff" or "Plaintiff Moleon") was discharged from his employment with SP Plus, Corp. ("SP Corp") on or about October 8, 2020. SP Corp based Plaintiff's discharge on a false statement by Kent Security ("KS Corp.") and its employee Ronald Manning on an incident report dated on or about October 1, 2020 that Plaintiff engaged in "vandalism" or vandalized his worksite. KS Corp., Manning repeated these defamatory per se statements to SP Corp. that caused Plaintiff's discharge. SP Corp, KS Corp and Manning repeated these defamatory per se statements to Local 272 including but not limited to "vandalism," "gross misconduct," and "unprofessional behavior." Local 272 repeated these defamatory statements to other union employees that caused the union's bad faith denial of

1

Plaintiff's meritorious discharge grievance and arbitration.  The union accordingly breached its duty of fair representation pursuant to 29 USC §185 and breach of fiduciary duty pursuant to ERISA 404 and 502.  All Defendants' defamatory per se statements and conduct caused Plaintiff's loss of wages, health welfare and pension benefits, tremendous stress leading to medically diagnosed high blood pressure, loss of spousal consortium and were so outrageous that they inflicted emotional distress on Plaintiff Moleon.

Plaintiff Moelon's bad faith discharge by Defendant SP Corp. and Local 272's denial of his meritorious discharge grievance and arbitration was designed to interfere with Plaintiff Moleon's right to the attainment of his vested and accrued health welfare and pension benefits under the union – employer health welfare and pension funds.  Plaintiff Moleon on behalf of other similarly situated former and current employees who have been discharged in bad faith by Defendant SP Corp and denied meritorious grievance and arbitration of their bad faith discharge by Local 272, to interfere with their right to attain their vested and accrued health welfare and pensions benefits.

<u>JURISDICTION and VENUE</u>

1.     Pursuant to 28 USC §1331 this Court has original jurisdiction of claims pursuant to 29 §185 et seq. cause of action for a union's breach of the duty of fair representation ("DFR") and pursuant to federal common law under *Vaca v. Sipes* 386 US 171 (1967) and its progeny of case law.  This Court has further original jurisdiction of claims arising under ERISA §502 et seq.,  sec. 510, 29 USC 1130 et seq.

2.     Pursuant to 28 USC §1367(a) his Court has supplemental jurisdiction of New York State Law claims as the state law claims arose out of a common nucleus of facts as the federal claim

involving the same parties so that they form the part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this district is proper as Defendant Local 272,  Defendant SP Corp. maintain their principal offices in this district.  Defendant Lopez is employed at Defendant SP Corp.'s New York County location as New York State Regional Human Resources Director.

<u>STATUTE OF LIMITATIONS</u>

4.      Based on *Vaca v. Sipes* 386 US 171 (1967) and its progeny of case law, the time limitation to file an action for breach of DFR is six (6) months from the date Plaintiff knew or should have known of the union's actual breach of the duty of fair representation.  Plaintiff Moleon was wrongfully discharged on or about October 8, 2020 and the instant action was timely filed on or about February 2021.

5.      ERISA section 502 claims are subject to a 6 year statute of limitations.  Defendants' interference and/or obstruction with Plaintiff Moleon's right to attain his health welfare and pension benefits occurred when Plaintiff Moleon was terminated as a participant on or about on or about October 8, 2020.

6.      Under New York State CPLR 215, defamation claims and intentional infliction of emotional distress are subject to a statute of limitations period of one year from the date of its publication.  The subject defamatory statements were made on or about October, 1 2020 and continue to date.  The conduct by Defendants that caused infliction of emotional distress occurred on or about October, 2020.

7.      Under New York State CPLR 214, the statute of limitations for negligent infliction of the of emotional distress is three years from the date of the injury.  All torts that are alleged by Plaintiff

Moleon occurred on or after March 1, 2020 to date, less than one year prior to the filing of the instant action.

8.      Pursuant to the Fair Labor Standards Act, 29 USC §201 et seq., the statute of limitations is two years from the date of the employer's wrongful conduct.  At various times throughout 2020, Defendant SP Corp, unlawfully failed to pay to Plaintiff Moleon, his earned wages and his sick and vacation wages.   At various times during 2020, Defendant SP Corp. unlawfully removed Plaintiff Moleon from payroll that caused the loss of contributions to and benefits under the subject health welfare and pension plan(s).

9.      Plaintiffs' action arising under ERISA section 510, 29 USC §1140 (a) should be afforded a six (6) year statute of limitations as it makes a claim under ERISA 502, 510's enforcement provision.  *See, Miles v. NYS Teamsters* 698 F.2d 593, 598 (2d Cir. 1983)

<u>FACT ALLEGATIONS</u>

**<u>The Parties:</u>**

10.     <u>Plaintiff Frantz Moleon</u> ("Plaintiff Moleon") is a resident of the state of New Jersey.  At all relevant times Plaintiff Moleon commuted by public transportation and worked in NYC. Plaintiff Moleon commenced his employment with SP Plus, Corp ("Defendant SP Corp.") as a garage attendant employee from on or about October 27, 2005 through the date of his wrongful discharge on or about October 8, 2020.  Plaintiff Moleon worked at Defendant SP Corp's various New York City locations for approximately fifteen (15) years without any breaks in service, in good standing and fully vested in his pension benefits.   Frantz Moleon was a member of the bargaining unit of garage attendant employees represented by Local 272 since on or about December 2005. Since on or about December 2005, Frantz Moleon was a participant of Local 272 health welfare and pension plan.

11.     <u>Similarly situated current and former employees</u> ("Collective Plaintiffs") are former and current employees of SP Corp. and members of Local 272 bargaining unit and vested Participants of the union / employer health welfare and pension plan(s) who were terminated based on false pretext / pretenses to prevent their attainment of health welfare and pension benefits, and denied their lawful and earned wages, and denied meritorious grievances and/or arbitration of their discharges and / or terms and conditions of their employment.

12.     <u>Defendant SP Plus Corp.</u> is a Delaware Corporation Registered / Authorized to do business in New York State.  Based upon information and belief, SP Corp. owns and operates parking garages at various locations in New York City, New York State and various states across the United States.  SP Corp's gross annual revenues exceed $500,000 and is engaged in interstate commerce as it operates garage locations nationwide.  SP Corp. New York Headquarters is located at 250 West 39th Street, Suite 1500, New York, NY 10018. Based upon information and belief, on or about October 1, 2020 SP Corp. was in violation of OSHA regulations for failing to provide access to a lavatory to its employees, specifically Plaintiff Moleon.

13.     <u>Defendant Garage Employees Local Union 272</u> (Defendant Local 272 or "Local 272") is a labor organization affiliated with International Brotherhood of Teamsters with its principal business office located at 220 E. 23rd Street, New York, NY 10010.  Local 272 is a party to a collective bargaining agreement (CBA) with the employer, SP Corp.  Defendant Local 272 has a standing duty to fairly represent, without hostility or bias toward any member of the bargaining unit respecting the terms and conditions of their employment with SP Corp garages in New York City.  Local 272 is an ERISA fiduciary for the bargaining unit members' health welfare and pension plan(s).

14.   <u>Defendant Margarita Lopez</u> ("Defendant Lopez") was the Regional Human Resources Director for SP Corp. at all relevant times.  During the relevant time period, Defendant Lopez made defamatory statements against Plaintiff Moleon in his discharge documents and in communications to all parties relating to Plaintiff Moleon's discharge that caused Plaintiff Moleon's discharge.  Defendant Lopez defamatory statements humiliated and unlawfully deprived Plaintiff Moleon of his rights to and attaining of his wages, health welfare and pension benefits.   Defendant Lopez thereby also inflicted extreme emotional distress on Plaintiff Moleon.

15.   <u>Kent Security Of New York, Inc.</u> ("KS" or "KS Corp") is a national corporation with a New York office located at 150 West 28th Street, New York, NY 10001.  KS Corp. provided security guard services to the worksite that Plaintiff Moleon was assigned to on or about October 1, 2020, the date of the "vandalism" incident.   KS without a basis in fact falsely stated on an incident report given to SP Corp., that Plaintiff Moleon "vandalized" the worksite by "urinating in public."  This false report served to libel and terminate Plaintiff Moleon's employment and inflicted emotional distress on Plaintiff Moleon.

16.   Kent Security employee Ronald Manning delayed Plaintiff Moleon's access to the one lavatory at the worksite that was shared by approximately two additional companies.   And falsely and maliciously stated on an incident report that Plaintiff Moleon engaged in "vandalism" and was "caught urinating outside the bathroom."

17.   Based on the subject incident report, Ronald Manning stated that he repeated these defamatory statements to Kent Security employees Konstantin Kleshnikor, and Carlos Rios. Manning falsely reported that Konstantin Kleshnikor, Carlos Rios Khayon Brown and Adeel

Bashir had first hand knowledge of the incident.  At the time the time Plaintiff lost bladder control, Manning was inside the lavatory and no other person was in the area.

18.     Plaintiff Frantz Moleon ("Plaintiff Moleon") was employed by SP Plus Corp. ("SP Corp.") from on or about October 2005 through the date of his discharge on or about October 8, 2020.  Plaintiff had no breaks in service during the relevant time period and worked without incident until on or about late March, early April 2020 at or about the onset of the COVID 19 pandemic business shut downs.  SP Corp. was a party to collective bargaining agreement ("CBA") with Garage Employees Local 272 ("Local 272") since on or about 2005.  Since on or about December 2005, Plaintiff Moleon was member of the bargaining unit represented by Local 272 and a participant of Local 272 health welfare and pension plan.  On or about October 1, 2020, Kent Security of New York, Inc. ("Kent, Inc.") and SP Corp. shared lavatory facilities located at 303 Sands Street, Brooklyn, NY.  Kent Inc. and SP Corp. falsely and maliciously stated that Plaintiff Moelon engaged in "vandalism" because he was "caught urinating outside the bathroom door" of the worksite located at 303 Sands Street, Brooklyn, NY.  Defendant SP Corp threated that there was video of Plaintiff Moleon intentionally "urinating in public" and engaging in "vandalism" at the worksite on or about October 1, 2020.   Plaintiff Moleon was discharged on or about October 8, 2020. To date, SP Corp. has stonewalled Plaintiff and denied access of the purported video to Plaintiff Moleon.  The discharge was based on a defamatory report by named KS employee Manning that baselessly, falsely and maliciously accused Plaintiff Moleon of "Vandalism" and "caught urinating outside the bathroom door" or intentionally urinating in public.

19.     SP Corp. discharged Plaintiff Moleon based on this false pretext of "vandalism" or intentional public urination to interfere with or prevent his attainment of his health welfare and

pension benefits in violation of ERISA sec 510 and 502.  Local 272 refused to grieve and arbitrate Plaintiff Moleon's meritorious claim for wrongful or pretextual discharge and breached its duty of fair representation to Plaintiff Moleon in violation of  §29 USC185.  Union Representative John Doe 1 ("UR John Doe 1")  defamed and outrageously inflicted emotional distress on Plaintiff Moleon by intentionally and maliciously stating in front of Plaintiff Moleon's spouse and other members present in the lobby, "you urinated in public…that's grounds for termination."  This Union employee John Doe 1 had knowledge and information relating to Plaintiff Moleon's grievance but was never asked for his opinion in the lobby and did not identify himself.

20.     SP Corp. further violated 29 USC §215 when it discharged Plaintiff Moleon in retaliation for filing NLRB charges against it for failure to comply with state and federal laws directly affecting the terms and conditions of employment Plaintiff Moleon and collective Plaintiffs. Plaintiff Moleon and collective Plaintiffs were denied adequate lunch breaks, denied reasonable or adequate access to a lavatory and denied compensation for hours worked in violation of the CBA,the Fair Labor Standards Act, 29 USC §201 et seq., New York State Wage Theft Act §641 et seq., Rules and Regulations and Occupational Safety and Health Administration (OSHA) Rules and Regulations.  Based upon information and belief, Collective Plaintiffs were terminated under false pretenses and Local 272 failed to grieve or arbitrate their termination and other meritorious grievances relating to terms and conditions of their employment in order to deny, obstruct or prevent All Plaintiffs of their rights to attain their earned / Participant health, welfare and pension benefits under ERISA 510 and 502 et seq.  Plaintiff Moleon and Collective Plaintiffs were given assignments that SP Corp knew they could not accept due to public transportation limitations during the 2020 COVID 19 shut downs.

21.     Defendant Margarita Lopez committed defamation per se by falsely accusing Plaintiff

Moleon on discharge documents and repeatedly exclaiming that Plaintiff Moleon "peed in

public" and it was "unprofessional behavior" to SP Corp. and Local 272 that Plaintiff Moleon

intentionally urinated in public and engaged in "vandalism."  Defendant Lopez along with Kent,

Inc., SP Corp. Local 272, and remaining individually named employees also defamed Plaintiff

Moleon with further malicious and humiliating statements on his discharge documents that he

"peed in public" and committed intentional public urination that are currently in the sole

possession of SP Corp.

22.     All Defendants intentionally inflicted emotion distress on Plaintiff Moleon by falsely

stating that he "vandalized" the worksite by "urinating in public." "peed in public."  It was

Defendant SP Corp. that caused the conditions for Plaintiff Moleon to lose bladder control.

Defendant Manning delayed Plaintiff Moleon's access to the lavatory and knowing that Plaintiff

likely had uncontrollable loss of bladder control due to the delay, falsely, intentionally and

maliciously stated that Plaintiff Moleon engaged in vandalism. Defendant SP Corp. violated

OSHA regulations by failing to provide reasonable access to a lavatory and denied Plaintiff

Moleon any lunch break or relief to access a lavatory at any time during his eight hour work shift

when it was fully aware of Plaintiff Moleon's diabetic condition that required at least one access

to a lavatory per work shift.   Defendant UR John Doe 1, falsely, intentionally, maliciously and

loudly stated in front of people in the lobby of the union office that Plaintiff Moleon "urinated in

public…that's grounds for termination."  Having to defend the false malicious attack on his

personal and professional reputation for "vandalism" and "urinating in public" has caused

Plaintiff Moleon to suffer extreme emotional distress that has resulted in his recent medical

diagnosis of high blood pressure that now requires treatment.  Plaintiff has suffered lost wages, prospective pay, health welfare and pension benefits and loss of spousal consortium.

23.     At all relevant times, the Defendant Local 272 owed a duty of fair representation ("DFR") to Plaintiff Moleon to represent him on matters relevant to his terms and conditions of employment with the employer Defendant SP Corp pursuant to a collective bargaining agreement ("CBA").

24.     Pursuant to the CBA and 29 USC §185, Defendant Local 272 had a duty to arbitrate meritorious grievances on behalf of Plaintiff Moleon in good faith without hostility or bias toward Plaintiff Moleon.

25.     Since on or about 2006, Plaintiff Moleon was diagnosed with Diabetes and his treatment required daily injections of insulin.  Plaintiff Moleon's work schedule was from 3pm to 11pm for the eight years prior to the onset of the COVID 19 pandemic on or about late March, early April 2020.  This regular schedule allowed him to inject daily insulin at home so that no work place accommodations for insulin injections were necessary and Plaintiff worked his shifts without incident with the employer and his union.

26.     Due to his diabetic condition as with most people afflicted with Diabetes, Plaintiff experienced intense needs to empty his bladder. An unreasonable and prolonged holding of his bladder just as any person without diabetes, caused the loss of his bladder control on October 1, 2021.  Notably, Plaintiff Moleon did not any relevant time make excessive trips to the lavatory. Moreover, Plaintiff did not request any accommodation beyond what all employees should have been given – at least one break per eight hour work shift with reasonable access to a lavatory. On or about October 1, 2020, Plaintiff was not provided with a break or relief to go to the lavatory. Defendants SP Corp. and Local 272 were both aware of his medical condition and that access to a lavatory was essential.

27.     OSHA rules and regulations 29 CFR 1910.141(c) (1) (i) requires "toilet facilities,…in all places of employment in accordance with Table J-1 of this section…"  Table J-1 requires one toilet for approximately every 20 employees at an employer's worksite.  In OSHA's 1998 memorandum, the background for this federal regulation was set forth as follows: "This memorandum explains OSHA's interpretation that this standard [29 CFR 1910.14(c)(1)(i)] requires employers to make toilet facilities available so that employees can use them when they need to do so.  The employer may not impose unreasonable restrictions on employee use of the facilities….Medical studies show the importance of regular urination…Adverse health effects that may result from voluntary urinary retention include frequency of urinary tract infections…renal damage…constipation, abdominal pain, diverticuli, and hemorrhoids…."

28.     OSHA's 1998 memorandum further stated, "The language and structure of the general industry sanitation standard reflect the Agency's intent that employees be able to use toilet facilities promptly.  The standard requires that toilet facilities be "provided" in every workplace. The most basic meaning of "provide" is to make available." … Toilets that employees are not allowed to use for extended periods cannot be said to be "available" to those employees…  Timely access is the goal of this standard.

29.     OSHA's 2006 regulation memorandum stated, "If an employer puts any restrictions on employee access to toilet facilities, such as locking doors and requiring the employees to ask and sign out a key, the restriction must be reasonable, and may not cause extended delays."

30.     The lavatory at the subject worksite was one minute away from Plaintiff's parking lot booth or workstation.  However, it was regularly locked, requiring a key.  Moreover, the next available lavatory at Wegman's supermarket was approximately a 10 minute walk from Plaintiff's workstation that was unreasonable especially if Plaintiff was not afforded any break time or had

to use the lavatory with any urgency.   Plaintiff was not provided any relief by a co-worker to leave his work station or a lunch break to provide adequate time and access to a lavatory.  On October 1, 2020, Plaintiff's access was further delayed by Defendant Manning who occupied the lavatory as Plaintiff desperately knocked on the door.

31.     During his approximately 15 years of employment with SP Corp., Plaintiff only had one incident that caused a "write up" by an SP Corp supervisor against him during on or about 2015. That day in 2015 Plaintiff had worked an eight (8) hour shift continuously without a lunch break or any other break.  At the end of Plaintiff's shift, a hotel requested that Plaintiff pick up a car. Because Plaintiff was exhausted and in need of a break, he requested another employee to pick up the car.  The supervisor however, was not satisfied and submitted an employee "write up" about Plaintiff to SP Corp and Local 272.  The write up was unjustified because SP Corp. unreasonably requested Plaintiff, at the end of his eight (8) hour work shift to work additional hours when he had no break during the 8 hour shift. Otherwise, Plaintiff did not have any pattern of misconduct on the job.

32.     New York Labor Law §162 requires that employees "shall be allowed at least thirty minutes for the noonday meal."  It further states, "Every person employed for a period or shift of more than six hours starting between the hours of one o'clock in the afternoon and six o'clock in the morning shall be allowed at least sixty minutes for a meal…at a time midway between the beginning and end of such employment."  This law states, "all categories of workers are covered, including white-color management staff."

33.     SP Corp had an unlawful pattern of denying Plaintiff and other employees of breaks during a 6-8 hour work shift and access to a lavatory.  Local 272 had a pattern of ignoring and  concealing SP Corp's bad faith and unlawful conduct toward its employees. Local 272 thereby had a pattern

of failing to represent employees or bargaining unit members regarding the terms and conditions of their employment in violation of the CBA and their DFR and ERISA fiduciary duties.

34.    Since on or about March 2020, both SP Corp. and Local 272 engaged in a pattern of bad faith conduct to set-up Plaintiff Moleon to discharge him from his employment.  After the previous eight (8) years of working a regular 3pm to 11pm workshift, on or about March 2020, Plaintiff's hours were suddenly reduced and given to another employee with less seniority under the CBA.

35.    Since on or about May 2020, Plaintiff was assigned to travel by foot to up to six various worksites in one day.  In violation of the CBA seniority clause, another member with far less seniority was given a preferred assignment that should have been granted to Plaintiff who had foreman status and seniority.

36.    Plaintiff was not paid his lawful wages to travel between worksites.  At various times, Plaintiff was not timely paid or paid his wages at all.  Plaintiff is still owed wages from on or about April 2020  that SP Corp. failed to pay.

37.    Since on or about late March 2020, at the onset of COVID-19 shut downs Plaintiff's anxiety and stress grew and ultimately resulted in his medical diagnosis of high blood pressure after the October 1, 2020 incident. After working the same 3pm and 11pm work shift for approximately eight years,  Plaintiff's hours were suddenly and consistently reduced and given to another worker with less seniority in violation of the seniority provisions of the CBA.  Plaintiff was suddenly assigned to short term temporary jobs at up to six (6) different worksites in one day when SP Corp and Local 272 knew that he did not have public transportation access to those sites or timely access to those sites.

38.    Plaintiff Moleon was not compensated for the time he needed to travel to the next work site by foot /walking or by public transportation.  One particular day on or about May 2020,

Plaintiff Moleon walked approximately ten minutes from one worksite to another and upon arrival, he requested a chance to drink water and was denied the time and access to water.  Some worksites that were inaccessible by public transportation were knowingly and purposely assigned to Plaintiff so that Plaintiff could not work those assignments.  SP Corp and Local 272 knew that Plaintiff did not own nor had access to his own vehicle.

39.     During on or about May 2020, SP Corp and Local 272 threatened to take away his health benefits if he did not work an overnight shift that they needed to fill.  SP Corp. and the union knew Plaintiff would suffer great difficulty getting home from this NYC worksite that was not readily accessible by public transportation to his home in NJ during COVID 19 shut downs ("COVID") when transportation was also shut down for the first time in NYC history after midnight to approximately 6AM.  Plaintiff Moleon's overnight shift would have ended at approximately 3AM.

40.      During May 2020, SP Corp. and Local 272 placed Plaintiff Moleon in an especially dangerous position to walk the streets at or about 3AM when the streets were especially deserted during COVID.  It was made open and notorious by Governor Andrew Cuomo's then daily public briefings that essential workers were facing assault on public transportation and walking home in the evenings and called for Mayor DeBlasio to remedy this problem for people who were keeping us safe and providing essential services.

41.     Since on or about May 2020, SP Corp. and Local 272 repeatedly threatened Plaintiff Moleon that he needed to work approximately 40 hours per week or face termination when it was these Defendants who reduced Plaintiff Moleon's assignments to approximately 13 hours per week.  These Defendants threatened to take away Plaintiff Moleon's health benefits and to withhold contributions to his health welfare and pension plan(s) and/or terminate him altogether.

42.     At all relevant times Local 272 was aware of the conditions that violated OSHA regulations because Plaintiff Moleon repeatedly requested reasonable access to a lavatory especially based on his diabetic condition.  Plaintiff Moleon also repeatedly requested adequate lunch breaks which at times were denied him and other bargaining unit members ("members") altogether.   Union representative stated to Plaintiff Moleon, I cannot bring up your diabetes or else we have to accommodate everyone with diabetes.

43.     On or about Saturday May 30, 2020 Plaintiff Moleon was assigned to a new worksite located at 303 Sands Street, Brooklyn, NY which lacked several basic accommodations that any employee should be afforded.  Plaintiff Moleon had no access to an employee room to take a break or be able to administer his medication for diabetes. Due to Plaintiff's disability and dietary restrictions he was required to bring food from home, but the worksite failed to provide a refrigerator to keep it cool or a way to heat it, so it sat in a bag for several hours in the booth where he sat. There was only use of one bathroom that was used for another company's security staff and approximately two other companies, which was under lock and key.  Only one employee worked at a time on Plaintiff Moleon's shift, and there were no relief provisions to take any breaks.

44.     At Plaintiff Moelon's previous worksite located at 250 Vesey St., New York, NY, SP Corp. provided access to a lavatory for Plaintiff Moleon to administer his medication however, at 303 Sands Street lack of access to a lavatory was a major issue that resulted in his discharge under false pretenses.

45.     On or about October 1, 2020 during his work shift, Plaintiff Moleon was not afforded any lunch break, relief, or reasonable time to gain access to a lavatory during his work shift.  When Plaintiff Moleon could no longer tolerate an urgent need to empty his bladder, he went to the lavatory closest to his workstation that was utilized by approximately 3 different companies.  The

other lavatory required him to walk approximately 10 minutes across the street, across a large parking lot, through passageways and stairs inside the building.   The lavatory was locked because Defendant Manning occupied it.  Plaintiff Moleon desperately knocked on the door to no avail.  At this point, there was no other lavatory immediately accessible.

46.    A video of the incident that the Defendants have stonewalled and refused to produce to Plaintiff will show that Plaintiff Moleon desperately knocked on the lavatory door and waited for the occupant Defendant Manning to exit the lavatory.  However, before Defendant Manning opened the lavatory door, Plaintiff Moleon had already lost control of his bladder.  Defendant Manning without knowing the facts and circumstances as to Plaintiff's loss of bladder control began to maliciously berate Plaintiff Moleon and commanded him to clean up the urine which Plaintiff Moleon promptly did as soon as he was directed to an available mop.

47.    Defendant Manning falsely and maliciously reported to SP Corp. and Local 272 that Plaintiff "vandalized" the worksite and was "caught urinating outside the bathroom" when it was Defendant Manning who further caused the delay in Plaintiff's access to the lavatory.  Defendant Manning was aware that Plaintiff was waiting to use the lavatory according to the incident report. SP Corp's failure to provide proper access pursuant to OSHA delayed Plaintiff's access to the lavatory in the first instance.  This false accusation of "vandalism" and "caught urinating outside the bathroom" or intentional public urination was repeated  to three (3) KS employees on a KS incident report that falsely stated Plaintiff committed "vandalism" and "caught urinating outside the bathroom."  This false KS incident report was forwarded to SP Corp. and adopted and repeated by Margarita Lopez, Regional Human Resources Director who terminated Plaintiff based on this false accusation of "vandalism."

48.     Ms. Lopez in turn defamed Plaintiff by announcing in public to third parties that Plaintif Moleon "peed in public," engaged in "gross misconduct" and "unprofessional conduct" and stating the same on various discharge documents.

49.     These false and malicious statements by Defendants caused Plaintiff Moleon to be discharged based on the false pretense of "vandalism," "gross misconduct" and/or "unprofessional conduct."   These defamatory statements further caused Local 2727 to deny Plaintiff Moleon a meritorious grievance and arbitration, and humiliated and inflicted emotional distress on Plaintiff Moleon.

50.     On or about October 16, 2020, Plaintiff Moleon and his wife went to the office of Local 272 to file his discharge grievance.  A union representative ("UR John Doe 1") who refused to identify himself,  stated out loud, in the lobby of the union office and in the presence of Plaintiff Moleon's wife and other union members, "you urinated in public…that's grounds for termination." UR John Doe 1 purposely stated this in public to defame Plaintiff Moleon and humiliate him in front of all persons in the lobby to not only defame Plaintiff Moleon but to inflict extreme emotional distress onto Plaintiff.

51.     On or about October 8, 2020 SP Corp. terminated Plaintff Moleon falsely claiming it had video of Plaintiff Moleon's intentional public urination.  Defendant Lopez stated on a phone call with third parties present, to Plaintiff Moleon "You peed in public!" for the sole purpose of defaming, humiliating and demeaning Plaintiff.  To date, SP Corp. and Local 272 have both refused to produce the subject video to Plaintiff Moleon and have stonewalled and denied plaintiff Moleon access to the subject video.

52.     The unaltered and unmodified subject video will show Plaintiff Moleon desperately knocking on the occupied lavatory door, holding his bladder, his attempts to desperately access

the lavatory, his denial of access to the lavatory and his ultimate loss of bladder control which was beyond his control.

53.     The unaltered and unmodified subject video will show that Defendant Manning, only upon exiting the lavatory, noticed urine on the ground due to Plaintiff Moleon's loss of bladder control and not that he "caught [Plaintiff] urinating outside the bathroom" that he stated was "vandalism." Defendant Manning's statements inflicted trauma and extreme emotional distress on Plaintiff Moleon. All other Defendants re-stated these false statements, perpetuated and repeatedly inflicted the same trauma and extreme emotional distress on Plaintiff Moleon and his spouse. Defendants also caused Plaintiff Moleon's loss of spousal consortium.

54.     Defendant Manning false and malicious statements, re-stated and perpetuated by SP Corp. and Local 272 that Plaintiff Moleon purposely urinated in public and engaged in vandalism caused Plaintiff's loss of wages and health welfare and pension benefits that constituted defamation per se.

55.     Local 272 refused to grieve and arbitrate Plaintiff Moleon's meritorious grievance and arbitration. Local 272 perpetuated the false narrative or pretext that Plaintiff Moleon intentionally urinated in public and Defendant Lopez' malicious and false statement that Plaintiff Moleon "Peed in public." This was a false pretext because Defendants caused the unreasonable access to any lavatory, denied Plaintiff adequate relief or breaks to use the lavatory and denied Plaintiff reasonable accommodations to use the lavatory to administer his diabetes medication. Defendants' wrongful and bad faith conduct caused Plaintiff Moleon to lose bladder control which he desperately made attempts to avoid.

56.     On or about October 2020, Union Representative Alex Gonzalez ("Gonzalez") purposely sabotaged Plaintiff Moleon's discharge grievance when he purposely gave Plaintiff Moleon the

wrong date of the meeting for his grievance causing Plaintiff Moleon's failure to appear.  Gonzalez sent an email dated on or about October 16, 2020 to Plaintiff Moleon stating that the grievance meeting was rescheduled to be held on October 27, 2020.  On or about October 20, 2020, the original grievance date, Gonzalez sent a text to Plaintiff Moleon at 11:05 AM asking if Plaintiff Moleon was going to attend his grievance meeting.  When Plaintiff Moleon stated to Gonzalez that he was not aware that the meeting would take place on October 20, 2020, Gonzalez protested that Plaintiff Moleon was verbally told by UR John Doe 1 on October 16, 2020 that the grievance meeting would be held on October 20, 2020 at 11am.  Local 272 intentionally and purposely acted in bad faith to deny Plaintiff a meritorious grievance hearing by forcing his failure to attend.

57.     Moreover, UR John Doe 1who refused to identify himself but had knowledge and information about Plaintiff Moleon's grievance, stated out loud, in the lobby of the union office and in the presence of Plaintiff Moleon's wife and other union members, "you urinated in public…that's grounds for termination."  Shortly thereafter, UR John Doe 1 shrugged his shoulders and walked away.  UR John Doe 1 did not at any relevant time state to Plaintiff Moleon that his grievance meeting would be held on October 20, 2020 as Gonzalez had falsely represented to Plaintiff Moleon.

58.     Defendants Local 272, SP Corp. and Lopez, in concert, jointly and severally inflicted severe emotional distress on Plaintiff Moleon by defaming and discharging him based on the false pretext that Plaintiff urinated in public as Defendant Lopez repeatedly stated about Plaintiff Moleon, "peed in public" and Defendant Local 272's perpetuation of SP Corp's false pretext of public urination and denial of Plaintiff Moleon's meritorious grievances and arbitration of his wrongful discharge and failure of SP Corp to provide breaks and access to a lavatory.  Defendant Local 272 also denied Plaintiff Moleon's grievance regarding adequate lunch breaks and

reasonable access to a lavatory, stating that the union would not raise Plaintiff Moleon's request for an accommodation for breaks and access to a lavatory that was frequently locked and required an unreasonable request for a key due to his diabetic condition and medical needs because it would then have to provide breaks and access to a lavatory to everyone.

59.     Defendants also sought to obstruct or interfere with each of Plaintiffs' entitlements to their respective pensions and health and welfare benefits in violation of ERISA Sec. 510, 29 USC §1130.  Defendants were vested in their health, welfare and pension benefits and without cause pursuant to the Collective Bargaining Agreement ("CBA") were terminated as participants of the health welfare and pension plan(s).  Plaintiff Moleon was a participant of the pension plan for approximately 15 years and would have been eligible to start receiving his pension benefits. Plaintiff Moleon earned and was entitled to receive his health and welfare benefits throughout 2020 but was denied at various times because Defendants failed to make contributions and unlawfully failed to pay earned wages, sick and holiday wages to Plaintiff Moleon without any notice whatsoever.  Plaintiff was threatened with denial of his benefits if he refused to work requisite work hours that Defendant SP Corp would not assign to him or if he refused to work an overnight shift or inaccessible work location.

AS and FOR Plaintiff Moleon's FIRST CAUSE OF ACTION FOR LOCAL 272's BREACH OF ITS Duty of Fair Representation Pursuant to 29 USC §185

60.     Plaintiff Moleon repeats and re-alleges each and every previous allegation as if fully set forth herein.

61.     During all relevant times, Fred Alston was the president of Defendant Local 272.   At all relevant times Pursuant to 29 USC §185, Defendant Local 272 had the duty to represent all collective bargaining unit members including Plaintiffs fairly, and in good faith without hostility

or bias against any member pursuant to the CBA for all matters affecting the terms and conditions of employment of Plaintiff Moleon with SP Corp.

62.     A union violates the DFR when it refuses to grieve and/or arbitrate based on personal animosity and bad faith.

63.     When a union ignores a grievance and allows the time period to lapse, a violation of the DFR occurs if the grievance has merit.  *See, Foust v. IBEW*, 442 US 42 (1979)

64.     Defendant Local 272 deliberately ignored Plaintiff Moleon's  meritorious discharge grievance  and / or arbitration pertaining to lunch breaks, reasonable access to a lavatory and his termination based on the false pretext of public urination.  Union Representative Jose Rojas stated to Plaintiff Moleon that Plaintiff's diabetic condition could not be raised with the employer because they would then have to give a lavatory accommodation to everyone.

65.     On or about October 2020, Union Representative Gonzalez purposely sabotaged Plaintiff Moleon's discharge grievance when he purposely gave Plaintiff Moleon the wrong date of the meeting for his grievance causing Plaintiff Moleon's failure to appear.  Alex Gonzalez sent an email dated on or about October 16, 2020 to Plaintiff Moleon stating that the grievance meeting was rescheduled to be held on October 27, 2020.  On or about October 20, 2020, the original grievance date, Gonzalez sent a text to Plaintiff Moleon at 11:05 AM asking if Plaintiff Moleon was going to attend his grievance meeting.  When Plaintiff Moleon stated to Gonzalez that he was not aware that the meeting would take place on October 20, 2020, Gonzalez protested that Plaintiff Moleon was verbally told by UR John Doe 1 on October 16, 2020 that the grievance meeting would be held on October 20, 2020 at 11am.  Local 272 intentionally and purposely acted in bad faith to deny Plaintiff a meritorious grievance hearing.

66.     Moreover, UR John Doe 1, who refused to identify himself but had knowledge and information about Plaintiff Moleon's grievance, stated out loud, in the lobby of the union office and in the presence of Plaintiff Moleon's wife and other union members, "you urinated in public…that's grounds for termination."  Shortly thereafter, UR John Doe 1 shrugged his shoulders and walked away.  UR John Doe 1 did not at any relevant time state to Plaintiff Moleon that his grievance meeting would be held on October 20, 2020 as Gonzalez had falsely represented to Plaintiff Moleon.

67.     On or about October 1, 2020, Defendant Local 272 perpetuated Defendants KS, Manning and SP Corp's defamatory statements that Plaintiff Moleon intentionally engaged in "vandalism" and "urination in public" that caused Plaintiff Moleon's discharge on or about October 8, 2020.  Defendant Local 272 breached its duty of fair representation ("DFR") when it denied Plaintiff Moleon's meritorious discharge grievance and arbitration pursuant to the CBA based on Defendant SP Corp and Lopez bad faith and defamatory discharge of Plaintiff Moleon.

68.     The unaltered or unmodified subject video will show that Plaintiff Moleon was desperately holding his bladder, his desperate knocking on the door to access the lavatory, his denial or delay of access to the lavatory and his ultimate loss of bladder control which was beyond his control.

69.     The unaltered or unmodified subject video will show that Defendant Manning delayed Plaintiff Moleon's access to the lavatory. Only upon exiting the lavatory Defendant Manning noticed that Plaintiff Moleon had lost bladder control and it was not that Manning "caught [Plaintiff] urinating outside the bathroom."   Without full knowledge of the facts, Manning inhumanly and unreasonably demeaned, humiliated and disparaged Plaintiff Moleon for a bodily function beyond his human control that Manning caused.   Manning inflicted trauma and extreme emotional distress on Plaintiff Moleon by falsely stating on an incident report that Plaintiff Moleon

"vandalized" the worksite by "urinating outside the bathroom" that directly caused Plaintiff's discharge.  Defendants perpetuated and repeatedly inflicted the same trauma and extreme emotional distress on Plaintiff Moleon and his spouse.  Defendants also caused Plaintiff Moleon's loss of spousal consortium.

70.     Defendant Manning falsely stated to SP Corp. and Local 272 that Plaintiff Moleon purposely urinated in public and engaged in "vandalism" of the worksite.  Defendants perpetuated the defamatory statements or accusations against Plaintiff Moleon which caused Plaintiff Moleon's termination from employment with SP Corp. and thereby constituted defamation per se.

71.     Local 272 refused to grieve and arbitrate Plaintiff Moleon's meritorious discharge grievance and arbitration.  Local 272 perpetuated the false narrative or pretext that Plaintiff Moleon intentionally urinated in public and Defendant Lopez' malicious and false statement that Plaintiff Moleon "Peed in public" and engaged in "gross misconduct" and "unprofessional behavior."  This was a false pretext because it was Defendant SP Corp. that failed to provide reasonable access to any lavatory in violation of OSHA rules and regulations.  SP Corp further denied Plaintiff adequate relief or breaks to use the lavatory in violation of FLSA and NYLL and denied Plaintiff reasonable breaks and access to the lavatory to administer his diabetes medication.  Defendants' wrongful and bad faith conduct caused Plaintiff Moleon to lose bladder control.

72.     On or about October 16, 2020, UR John Doe 1, falsely and maliciously stated out loud in the union office lobby in front of all persons present that Plaintiff Moleon "urinated in public…that's grounds for termination" shrugged his shoulders and walked away.

73.      Defendants Local 272, SP Corp. and Lopez, in concert, jointly and severally inflicted severe emotional distress on Plaintiff Moleon by discharging him based on the false pretext that Plaintiff urinated in public as Defendant Lopez accused Plaintiff Moleon "you peed in public" and

Defendant Local 272's perpetuation of SP Corp's false pretext of public urination and denial of Plaintiff Moleon's meritorious grievances and arbitration of his wrongful discharge.  Defendant Local 272 also denied Plaintiff Moleon's grievance regarding adequate lunch breaks and reasonable access to a lavatory, stating that it could not raise Plaintiff Moleon's request for an accommodation for his diabetic condiction and medical needs because it would then have to address other members with diabetes.

74.     Defendant Local 272 was knowingly complicit in Defendant Lopez and Defendant SP Corp's scheme and plan to interfere, obstruct and/or deprive Plaintiff Moleon and collective Plaintiffs of their rights to attain their pension, health and welfare benefits.   Defendant SP Corp and Lopez scheme and plan was to discharge Plaintiff Moleon for false pretextual reasons, e.g. public urination when it was SP Corp's misconduct and failure to comply with OSHA regulations to provide reasonable access to a lavatory.  Defendant Local 272 was a party to scheme by denying Plaintiff Moleon's discharge grievance and arbitration when it knew Plaintiff Moleon did not engage in intentional public urination.  Defendants' concerted activity terminated Plaintiff Moleon as a participant of the subject health welfare and pension plan(s).

75.     At the time Plaintiff Moleon was terminated as a participant of the health welfare and pension plan(s), he was a vested participant for approximately 15 years without prior breaks in service and would have been eligible to start receiving his pension benefits.  Plaintiff Moleon earned and was entitled to receive his health and welfare benefits throughout 2020 but was denied at various times because Defendants failed to make contributions and unlawfully failed to pay earned wages, sick and holiday wages to Plaintiff Moleon without any notice whatsoever.  Plaintiff was threatened with denial of his benefits if he refused to work requisite work hours that Defendant

SP Corp would not assign to him or if he refused to work an overnight shift or inaccessible work location.

76.     As an ERISA fiduciary, Local 272 breached its duty to safeguard and ensure attainment of all benefits by Participants of its health welfare and pension funds.  Local 272 ensured the opposite by failing to grieve and arbitrate on behalf of Plaintiff Moleon and Collective Plaintiffs, SP Corp's breach of the discharge, seniority and health welfare and pension provisions of the CBA

77.     The Defendants' fraudulent scheme benefitted the Defendant Local 272 because it saved them the costs and attorney's fees of termination arbitrations.  Even though Defendant Local 272 lost older vested pension employees, it gained new replacement employees who paid union dues, and the hourly contributions made into the Defendant union's pension, health and welfare plans for the replacement employees by Defendant SP Corp. remained unchanged.

78.     On or about September 21, 2020, Defendant Local 272 denied Plaintiff Moleon's health and welfare benefits by falsely and intentionally alleging Plaintiff Moleon was terminated at that time.  Plaintiff Moleon informed Local 272 that he was laid off for approximately 2 weeks during on or about April 2020 but continuously worked since on or about May 6, 2020 when he returned to work.   To date, Local 272 has not covered Plaintiff Moleon's medical claim for his medical care on or about September 21, 2020.

79.     Defendant Local 272 further breached its DFR when on or about April 2020 it and SP Corp. assigned another member with less seniority under the CBA to a job that Plaintiff Moleon was next in line for based on his higher seniority status.  Local 272 refused to grieve this breach of seniority clause under the CBA when it knew it was violated against Plaintiff Moleon.

80.     Based on the Union's breach of DFR and its fiduciary duty pursuant to ERISA 404 and 502,  Plaintiff Moleon seeks immediate reinstatement to work based on his seniority status under

the CBA, reinstatement as a plan participant to the subject health welfare and pension plan (s),

back pay with 9% pre and post judgment interest, restitution of his benefits under the Plan since

his discharge and during on or about April 2020, reasonable attorneys fees and costs.

AS AND FOR PLAINTIFF'S and Collective Plaintiffs' SECOND CAUSE OF ACTION FOR
DEFENDANTS' INTERFERENCE WITH PLAINTIFFs RIGHTS TO PENSION BENEFITS
UNDER ERISA 510 and 502

81.    Plaintiff Moleon on behalf of himself and on behalf of similarly situated Plaintiffs repeat

and re-allege each and every previous allegation as if fully set forth herein.

82.    A recovery under ERISA section 510, 29 USC 1140 requires the Plaintiff to show that the

employer's conduct was taken for the purpose of interfering with the attainment of any right to

which the employee may become entitled.

83.    Under ERISA section 502, 29 USC 1132, a plan participant or beneficiary may bring a

civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under

the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

84.    During all relevant times Plaintiff Moleon and collective plaintiffs were participants and

/or beneficiaries of the Union / Employer health, welfare and pension funds.

85.    During all relevant times Local 272 was a Plan fiduciary and breached its fiduciary duty to

Plaintiff Moleon and Collective Plaintiffs pursuant to ERISA 404 and 502. As an ERISA fiduciary,

Local 272 breached its duty to safeguard and ensure attainment of all benefits by Participants of

its health welfare and pension funds.  Local 272 ensured the opposite of termination of Plan

Participants by denying meritorious grievances and arbitrations on behalf of Plaintiff Moleon and

Collective Plaintiffs for SP Corp's breach of the discharge, seniority and health welfare and

pension provisions of the CBA.

86.     As a result of this breach of fiduciary duty, Local 272 President Fred Alston is personally, individually, jointly and severally liable for Plaintiffs' ERISA 502 damages.

87.     Pursuant to ERISA 502, Plaintiffs may also see equitable relief to "enjoin any act or practice which violates" ERISA 510, or the terms of the plan, or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

88.     Terminations from employment based on a false pretext, of a vested plan participant is prima facie evidence of interfering with the attainment of pension benefit rights to which each of Plaintiffs were fully vested in and entitled to at the time of their respective dates of termination from employment in 2020.  Plaintiff Moleon was discharged based on the false pretext of "vandalism" and "urinating in public" or intentional public urination.

89.     On or about October 8, 2020 SP Corp. terminated Plaintff Moleon falsely stating and claiming it had video of Plaintiff Moleon's "vandalism" or intentional public urination as detailed *supra* in the FIRST CAUSE OF ACTION.  Defendant Lopez stated on a phone call to Plaintiff Moleon only to humiliate him, "You peed in public!"  Based upon information and belief, Lopez exclaimed "you peed in public" in front of other persons at her office, and repeated the statement to others that Plaintiff Moleon "peed in public."  To date, SP Corp. and Local 272 have both stonewalled and refused to produce or provide access to the subject video to Plaintiff Moleon.

90.     At all relevant times, Defendant SP Corp. was in violation of OSHA, FLSA and NYLL rules and regulations and the CBA as alleged *supra* that caused the loss of all Plaintiffs' health welfare and pension benefits.

91.     Defendants also sought to obstruct or interfere with each of Plaintiffs' entitlements to their respective pensions and health and welfare benefits in violation of ERISA Sec. 510, 29 USC §1130

by terminating them under a false pretext.  Defendants were vested in their health, welfare and pension benefits and based on a false cause pursuant to the Collective Bargaining Agreement ("CBA") terminated Plaintiffs as participants of the health welfare and pension plan(s).

92.     Plaintiff Moleon was a participant of the pension plan for approximately 15 years and would have been eligible to start receiving his pension benefits.  Plaintiff Moleon earned and was entitled to receive his health and welfare benefits throughout 2020 but was denied at various times because Defendants failed to make contributions and unlawfully failed to pay earned wages, sick and holiday wages to Plaintiff Moleon without any notice whatsoever.

93.     Plaintiff Moleon seeks reinstatement to the subject health welfare and pension plan(s) and restitution of benefits that were denied him on or about September 2020 to date or any other relevant date, back pay and front pay and pursuant to ERISA section 510, 29 USC 1132(a) under the pension, health and welfare plans and attorneys fees and costs pursuant to ERISA 29 USC 1132(g).

94.     Plaintiff Moleon seeks to enjoin Defendants from their practice and policy of discharging Plaintiff based on a false pretext and additional equitable and legal remedies as set forth *infra* in the Collective allegations and prayer for relief.

COLLECTIVE ERISA ACTION ALLEGATIONS

95.     Plaintiff Moleon on his own behalf and on behalf similarly situated former and current employees repeat and re-allege all previous allegations as if fully set forth herein.

96.     ERISA 502, 29 USC 1132 (a) et seq. allows a benefit plan participant to bring a civil action to recover benefits due to him, to enforce his rights under the plan or to clarify his rights to future benefits under the plan.  A participant may also obtain and order to 3(A) enjoin any act or practice

which violates any provision of this subchapter or the terms of the plan or 3(B) to obtain other appropriate equitable relief.

97.     At all relevant times, Plaintiff Moleon and collective plaintiffs were participants of Local 272's health welfare and pension plan(s).  Defendants interfered with Plaintiffs' rights to their benefits by terminating them in bad faith and under false pretenses pursuant to ERISA 510.

98.     Similarly situated Collective Plaintiffs were fully vested in their pension plans and entitled to their earned health and welfare benefits.   Collective Plaintiffs were also discharged or constructively discharged, demoted, had work hours reduced, denied any breaks during an 8 hour work shift or purposely given inaccessible work locations in violation of the seniority clause of the CBA since on or about COVID restrictions began on or about late March 2020.  Collective Plaintiffs were ultimately discharged since COVID based on a false pretext by Defendant SP Corp. and Local 272 as ERISA Plan fiduciary denied their meritorious grievance and arbitrations under the CBA.

99.     At all relevant times, as an ERISA fiduciary, Local 272 breached its duty to safeguard and ensure attainment of all benefits by Participants of its health welfare and pension funds.  Local 272 ensured the opposite by denying meritorious grievances and arbitrations on behalf of Plaintiff Moleon and Collective Plaintiffs for SP Corp's breach of the discharge, seniority and health welfare and pension provisions of the CBA

100.    Based upon information and belief, Collective Plaintiffs were also threatened with discharge and/or denial of their health and welfare benefits and employer contributions if they did not work assignments that the employer needed to cover or assignments that the employer and union knew that the Plaintiff could not timely access by public transportation if at all. Based upon

information and belief, Defendants SP Corp and Local 272 utilized a multitude of false pretenses to discharge Plaintiffs.

101.    Plaintiff Moleon brings this collective action authorized by 29 USC 216(b), 215(a)(3) and under ERISA 510 and 502 on his own behalf and on behalf of similarly situated former and current participants of the union / employer health, welfare and pension plan whose vested /accrued benefits or pension amounts that were in violation of CBA provisions and terminated by Defendants SP Corp. and Local 272 in retaliation for participants' meritorious requests to file grievances and arbitrations for their false pretense discharges.

102.    This action is appropriately a collective action pursuant to New York Labor Law §163, 29 USC 216(b) , 215 (a)(3) which authorize a collective action for any person… "(a) to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused…any proceeding…related to this chapter…"   At all relevant times Defendant SP Corp. retaliated against Plaintiffs Moleon by failing to pay his wages and commensurate contributions to the health welfare and pension plan and in retaliation for filing grievances for lunch breaks, reasonable access to lavatory facilities in compliance with OSHA regulations, for application of seniority provisions under the CBA as to Plaintiff Moleon's job assignments and their bad faith suspensions, and discharge of Plaintiff Moleon based on the false pretext of "vandalism."

103.    Based upon information and belief collective plaintiffs were similarly retaliated against by SP Corp for filing grievances and/or complaints pertaining to the terms and conditions of their employment and their respective bad faith suspensions and discharges based on a false pretext.

104.    Based upon information and belief, at all relevant times, Local 272 was aware of any and all meritorious grievances of Plaintiff Moleon and collective plaintiffs and complaints of their bargaining unit members.

105.    Based upon information and belief, Local 272 was aware that Defendant SP Corp. was non-compliant with OSHA's requirement of every employer to give every employee "access" to a lavatory facility; that every employee was required to be given a lunch break for every eight hour work shift; that employees with diabetes required more frequent lavatory breaks; that SP Corp. was required to honor the seniority provision of the CBA when assigning members to job assignments and that Plaintiff Moleon did not engage in intentional public urination. Notwithstanding, Local 272 denied Plaintiff Moleon's grievance on any of these non-compliance and discharge based on a false pretext.

106.    Based upon information and belief, Local 272 denied the meritorious grievances of collective Plaintiffs, as Union Representative Jose Rojas stated to Plaintiff Moleon that the union could not raise his diabetes accommodation issue because then it would have to provide that accommodation to everyone.

107.    Collective Plaintiffs seek reinstatement as Plan participants to the subject health welfare and pension plan(s); restitution of all benefits denied to them during the relevant time period; back pay with pre and post judgment interest; reasonable attorneys fees and costs and the following equitable remedies:  1.) Declare that Defendants have violated ERISA since on or about April 1, 2020 at or about the onset of the COVID 19 pandemic by discharging Plaintiff Moleon and collective Plaintiffs based on a false pretext in order to deprive them of wages, employer contributions to and interfering with each Plaintiffs' rights and attainment of their benefits under the subject health welfare and pension plan(s); 2) Enjoin Defendant Local 272 from denying

meritorious grievances and arbitrations; 3) Declare that Defendant 272 violated OSHA regulations and compel compliance with OSHA regulations by providing adequate lunch breaks under FLSA 201 et seq., and NYLL; 4) enjoin Defendants from their arbitrary practice of removing members from payroll; and 5) Order restitution, reinstatement or recovery of all of Plaintiffs' health welfare and pension benefits denied to them; and 6) any and further equitable relief as this Court deems just and proper.

108.     Plaintiff Moleon and collective plaintiffs request the following remedies at law pursuant to ERISA 502: 1) order Defendants to calculate accrued benefits and pension amounts due to Plaintiff Moleon and each Collective Plaintiff; 2) Order Defendants to pay Plaintiff Moleon and each collective plaintiff their accrued health welfare and pension benefits with pre and post judgment interest complounded monthly; 3) order Defendants to pay back wages or sick and vacation wages or any other remuneration due and owing to Plaintiff Moleon and collective plaintiffs  with 100% liquidated damages and pre and post judgment interest thereupon; and 4) award Plaintiff Moleon and collective Plaintiffs reasonable attorneys fees, costs and expenses; and 5) award Plaintiff Moleon and Collective Plaintiffs any and other further relief as this Court deems just and proper.

AS AND FOR THE THIRD CAUSE OF ACTION AGAINST DEFENDANTS FOR INFLICTION OF EXTREME EMOTIONAL DISTRESS

109.     Plaintiff Moleon repeats and re-alleges each and every previous allegation as if fully set forth herein.

110.     A New York State law claim for severe emotional distress is actionable against a union for the breach of DFR for outrageous conduct.  *See Baskin v. Hawley* 807 F2d 1120, 1133 (2d Cir. 1986)  Outrageous conduct may be evidenced by malicious and willful conduct by the union.  Id.

111.     Defendant Local 272's conduct in this case was "outrageous" for loudly announcing to Plaintiff Moleon in front of his wife and other union members in the lobby of the union office,

"you urinated in public…that's grounds for termination."  The fact that Plaintiff Moleon did not request this opinion or that it be loudly announced in public underscored the malice with which this false statement was made as it was specifically aimed to humiliate, demean and subject Plaintff Moleon to public scorn, aversion or ridicule.  This conduct was further outrageous for denying Plaintiff Moleon's meritorious grievances and discharge arbitration because Local 272 was fully aware at all relevant times that Plaintiff was a diabetic requiring administration of medication during the day and required OSHA compliant access to a lavatory.  Local 272 was also fully aware that SP Corp caused the conditions for Plaintiff to lose bladder control because Local 272 was fully aware that SP Corp was not only in violation of OSHA lavatory regulations.  Importantly and inhumanly, Local 272 was fully aware that SP Corp denied Plaintiff Moleon any breaks during his 8 hour workshift since he was transferred to the subject worksite on or about May 2020, in violation of NY Labor Law that required all employers to provide to any and all employees at least a 1 hour break during a 6 to 8 hour workshift.  Notwithstanding this knowledge, Local 272 outrageously denied Plaintiff Moleon's grievances for lunch breaks and reasonable access to a lavatory.  Despite being aware of these conditions, Local 272 perpetuated the false pretext of Plaintiff Moleon's discharge that he intentionally urinated in public and/or engaged in "vandalism."

112.    On or about October 16, 2020 when Plaintiff Moleon and his wife went to the union office to file a grievance about his discharge from SP Corp., UR John Doe 1, who did not identify himself came out to the lobby and loudly stated to Plaintiff Moleon in front of other members present in the lobby, you "urinated in public and that's grounds for termination."  Plaintiff's wife requested that UR John Doe 1 to not discuss the matter so publicly but UR John Doe 1 refused and continued to loudly and maliciously make light of the public urination to the multitude of people in the lobby.

After slandering Plaintiff Moleon in the lobby UR John Doe 1 shrugged his shoulders and walked away.

113.    Defendant Lopez and Defendant SP Corp. falsely accused Plaintiff Moleon that "you peed in public" and engaged in "vandalism" and "gross misconduct" and "unprofessional conduct" and discharged him on this false pretext.  Defendant SP Corp was aware at all relevant times that it was not OSHA compliant with respect to providing access to a lavatory to Plaintiff Moleon and all other employees.  Defendant SP Corp was aware at all relevant times that it willfully denied Plaintiff Moleon any breaks during his 8 hour workshifts since at least on or about May 2020. Defendant maliciously, willfully, forseeably and knowingly set up these unlawful work conditions that directly cause this humiliating incident of losing bladder control that was completely beyond Plaintiff Moleon's control.

114.    Based upon information and belief, Defendants Lopez and SP Corp were aware that the subject video showed Plaintiff Moleon desperately sought access to the one lavatory at the subject worksite that was used by approximately three other employers and their employees.

115.    Defendants knowingly and falsely advance the pretext that Plaintiff Moleon engaged in any misconduct when it was Defendants who caused Plaintiff Moleon loss of bladder control.  This malicious and false narrative that Plaintiff Moleon intentionally urinated in public, engaged in "vandalism" and by exclaiming "you peed in public!" as if Plaintiff Moleon was a child caused intense humiliation and inflicted extreme emotional distress to Plaintiff Moleon and a subsequent loss of spousal consortium.  This extreme emotional distress has resulted in high blood pressure for which Plaintiff Moleon was medically diagnosed and under treatment.

116.    Prior to the October 1, 2020 incident Defendants SP Corp and Local 272 subjected Plaintiff Moleon to tremendous stress by reducing his hours, threatening to take away his health benefits

and discharge him if he did not work at the locations they assigned him, sometimes up to six different locations that he had to walk at least 10 minutes between locations. Plaintiff was not compensated for his travel time in between worksites during a workshift.  Plaintiff was denied water breaks after walking between worksites, lunch breaks, access to a lavatory, an adequate break room to keep and heat his special dietary meals.  At all relevant times, SP Corp. was aware of Plaintiff Moleon's need to daily administer his diabetes medication and access to a lavatory. All of this bad faith and unlawful conduct in conjunction with the October 1, 2020 incident was outrageous on the part of Defendants and thereby inflicted emotional distress on Plaintiff Moleon.

117.    Plaintiff Moleon seeks compensatory and punitive damages for emotional distress inflicted by Defendants.

AS AND FOR THE FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS UNDER A NEW YORK STATE LAW CLAIM FOR CIVIL CONSPIRACY

118.    Plaintiff Moleon repeats and re-alleges each and every previous allegation as if fully set forth herein.

119.    A New York Claim for civil conspiracy is not an independent tort and therefore, based on a primary tort cause of action.

120.    Based on Defendants' liability for the torts of defamation per se and infliction of extreme emotional distress as set forth in the Third Cause of Action *supra* and Fifth Cause of Action *infra*, Defendants acted in concert and agreement with each other and engaged in a civil conspiracy to deprive Plaintiff Moleon of his wages, health welfare and pension benefits, cause damage to his social and professional reputation, cause loss of spousal consortium and inflict mental, emotional and psychological ham to Plaintiff Moleon.

121.    Based on the intentional, willful, malicious and bad faith conduct of Defendants against Plaintiff Moleon, Defendants have caused actual, economic, compensatory and punitive damages

for emotional distress to Plaintiff Moleon and compensatory and prospective damages to Plaintiff

for defamation per se.

122.    Pursuant to their liability for civil conspiracy, Defendants are jointly and severally liable

to Plaintiff Moleon in an amount to be proven at trial for actual, compensatory, special, treble and

punitive damages and attorneys fees and costs.

AS AND FOR THE FIFTH CAUSE OF ACTION FOR DEFAMATION PER SE OF

PLAINTIFF MOLEON BY ALL NAMED DEFENDANTS

123.    Plaintiff Moleon repeats and re-alleges each and every previous allegation as if fully set

forth herein.

124.    Defamation is a false statement that tends to expose a person to public contempt, hatred,

ridicule, aversion or disgrace, published to a third party without privilege or authorization by the

Defendant and either causing special harm or defamation per se.  A statement is defamatory per se

if it tends to injure the plaintiff in his trade, business or profession.

125.    Plaintiff was discharged on or about October 8, 2020 for false statements that he engaged

in "vandalism," "gross misconduct" "unprofessional conduct," "urination in public" and "caught

urinating outside the bathroom."   In truth, Plaintiff lost control of his bladder when he was denied

access to a lavatory on or about October 1, 2020.  Plaintiff had been denied any break during his

8 hour work shift on or about October 1, 2020 in order to use the lavatory.  Plaintiff attempted to

access the closest lavatory used by approximately 3 companies, in violation of OSHA regulations.

The next closest lavatory was approximately a 10 minute walk across the street, through a large

parking lot and corridors and stairs inside a building which also violated OSHA.  Defendant

Manning who occupied the single lavatory further delayed Plaintiff's access to the lavatory.

Plaintiff desperately knocked on the door.  Before Defendant Manning exited the lavatory, Plaintiff

had already lost control of his bladder.  Therefore, Defendant Manning falsely stated that Plaintiff was "caught urinating outside the bathroom."

126.    Defendants KS and Manning falsely stated that Plaintiff Moleon engaged in "vandalism" and was "caught urinating outside the bathroom" when Manning only observed "a puddle of water on the floor." The subject incident report acknowledged that Plaintiff Moleon was waiting for him to exit the lavatory, stating, "the worker waited for fire guard Ron to come out of the bathroom so that he could go in."  Defendant Manning's own latter statements were inconsistent with intentional public urination or "vandalism."

127.    Defendants KS and Manning are not afforded privilege or qualified privilege in making the defamatory per se statements of "vandalism" and "caught urinating outside the bathroom" on the October 1, 2020 incident report. KS and Manning had the duty to accurately report facts that Manning had witnessed and he falsely reported facts that he did not witness such as "vandalism" and "caught urinating outside the bathroom" when Plaintiff had already lost bladder control and was not in the process of urinating when Defendant Manning exited the lavatory.

128.    KS Employee Brown was the supervisor who Manning claimed on the incident report to have first hand knowledge of the October 1, 2020 incident.  However, just as Manning, Brown had a duty to truthfully report facts.   Manning and Brown did not witness "vandalism" or that he "caught [Plaintiff] urinating outside the bathroom."  Defendant Brown had a duty to recommend that Manning accurately report the facts.  Manning was made aware after the incident that Plaintiff had diabetes.  Manning should have accurately checked off that Plaintiff was sick or other on the report, not  "vandalism."   Neither Manning nor Brown had a privilege or qualified privilege in making the defamatory per se statements.  The incident report specifically indicated that police were not notified of purported "vandalism."

129.    KS defendants falsely stated Plaintiff Moleon engaged in "vandalism" and "caught Plaintiff urinating outside the bathroom" and were fully aware their statements would be used to terminate Plaintiff Moleon.

130.    On or about October 2020 when Plaintiff Moleon and his wife went to the union office to file a grievance about his discharge from SP Corp., a union representative who did not identify himself came out to the lobby and stated to Plaintiff Moleon in front of other members present in the lobby, you "urinated in public and that's grounds for termination."  This union representative after slandering Plaintiff Moleon in the lobby shrugged his shoulders and walked away.

131.    This false accusation of intentional public urination was adopted and repeated by Marquerita Lopez, Regional Human Resources Director who stated to a multitude of third parties that Plaintiff Moleon "peed in public" engaged in "vandalism" "gross misconduct" and "unprofessional conduct" and terminated Plaintiff based on these false accusations of wrongdoing. At all relevant times Ms. Lopez was aware of Plaintiff Moleon's diabetes requiring breaks and access to a lavatory.  Ms. Lopez was also aware or should have been aware that SP Corp was in violation of OSHA regulations by failing to provide access to a lavatory to Plaintiff Moleon and all other employees. Ms. Lopez defamed Plaintiff Moleon with this false narrative of "vandalism" and "urination in public" in Plaintiff Moleon's discharge documents that caused Plaintiff to be maliciously discharged, humiliated and inflicted extreme emotional distress on Plaintiff. Defendant Lopez exclaimed on the phone to Plaintiff Moleon, "you peed in public!"  in the presence and within earshot of Defendant Lopez co-workers and subordinates.

132.    Based upon information and belief, the Defendants who defamed Plaintiff Moleon were all aware from the video that they purported to have and threatened Plaintiff Moleon with, that Plaintiff Moleon was desperately knocking on the one available bathroom door and that he did

neither vandalized nor intentionally urinated in public.  The video will show that because of the delay accessing the lavatory caused by Defendant Manning and Defendant SP Corps violation of OSHA regulations, Plaintiff Moleon lost bladder control which was beyond his control.

133.    Plaintiff Moleon seeks compensatory and prospective damages he suffered as a result of the Defendants' defamation per se.

Based on the foregoing, Plaintiff Moleon requests the following legal and equitable relief:

1)      Declare Defendant Local 272 breached its DFR to Plaintiff Moleon; and

2)       Order Defendant Local to re-instate Plaintff Moleon's employment and pay back wages with pre and post judgment interest; and

3) Declare Defendants Kent Security and employee Manning defamed Plaintiff per se by falsely and maliciously stating verbally and in writing on the incident report that Plaintiff Moleon "vandalized" the subject worksite that caused Plaintiff Moleon's pretextual discharge; and

4) Declare that Defendants SP Corp. and Local 272 defamed per se, Plaintiff Moleon by repeating Defendant Kent Security's defamatory statements; and

5) Declare all named Defendants inflicted emotional distress on Plaintiff by making defamatory statements that caused his termination, and caused his loss of wages, health welfare and pension benefits and caused damage to his personal and professional reputation and caused mental, emotional and psychological harm; and

6) Declare based on emotional distress and defamation per se liability that All named Defendants engaged in a civil conspiracy to deprive him of wages, health welfare and pension benefits and cause Plaintiff mental, emotional and psychological harm; and

7) Order all named defendants individually, jointly and severally liable and pay for the following damages based on liability declarations 1 through 5:

A) Plaintiff's backpay from the date of discharge on or about October 8, 2020; and

B) prospective damages for lost wages to date; and /or

C) all per se defamation compensatory and prospective damages; and

D) emotional distress compensatory, special and punitive damages; and

E) treble damages under the civil conspiracy claim; and

F) attorneys fees, costs and expenses; and

8) Order Defendants SP Corp. and Local 272 to pay the following ERISA 502 damages to Plaintiff Moleon and Collective Plaintiffs:

A) Order Defendants to calculate accrued benefits and pension amounts due to each Collective Plaintiff without any breaks in service; and

B) Order Defendants to pay each Collective Plaintiffs their accrued health welfare and pension benefits with pre and post judgement interest compounded monthly ; and

C) Order Defendants to pay back wages or any other remuneration including but not limited to paid sick and vacation days due and owing to Plaintiffs with 100% liquidated damages and pre and post judgment interest; and

9) Order the following equitable remedies against Defendants SP Corp and Local 272 in favor of Plaintiff Moleon and Collective Plaintiffs:

A)  Assume jurisdiction over this action; and

B) Certify this action as a collective action and order Defendants to contact opt-in bargaining unit members; and

C) Declare Defendants SP Corp. and Local 272 violated ERISA 510 and 502 since on or about March, 2020 to interfere with Plaintiff Moleon and Collective Plaintiffs' attainment of their health welfare and pension benefits; and

D) Declare that Defendant SP Corp terminated Plaintiff Moleon and Collective Plaintiffs based on false pretenses to deny them of their lawful wages and breaks within one workshift in violation of the CBA and FLSA §201 et seq. NY Wage Theft Act §641 et seq. and rules and regulations.

E) Declare Defendant SP Corp. violated OSHA rules and regulations by failing to provide access to its employees to a lavatory and ORDER immediate compliance with OSHA rules and regulations; and

F) Declare Defendant Local 272 and Fred Alston breached their ERISA fiduciary duty pursuant to ERISA 404 and 502 to Plaintiff Moleon and Collective Plaintiffs; and

G) Enjoin Defendants SP Corp., Local 272 and Fred Alston from continuing to violate the health welfare and pension Plan(s) and ERISA 502; and

H) Order Defendants SP Corp's immediate compliance with the CBA, OSHA rules and regulations, FLSA, NYLL, Rules and Regulations; and

I) Order restitution, reinstatement or recovery of all of Plaintiffs' health welfare and pension benefits status, retroactive monetary damage amounts owed, and prospective benefits.

J) With respect to future pension benefits, Order that Plaintiffs are entitled to claim their pension benefits without any breaks in service. For Plaintiffs who would have claimed pension benefits already, order that Plaintiffs be restored to their Participant status and any retroactive pension benefits paid to them with pre and post judgment interest, compounded monthly

K) Award all Plaintiffs' reasonable attorneys fees, costs and expenses: and

10) Order Defendant Local 272 to reinstate Plaintiff Moleon and Collective Plaintiffs' seniority and/or hourly credits without any breaks in service under the CBA and the Pension, health and welfare funds; and

11) for any and further legal and equitable relief that this Court deems just and proper.

Dated: New York, NY
      February 17, 2021

                Law Office of Susan Ghim

                _____

By:    Susan Ghim
       244 Fifth Avenue, Suite 1434
       New York, NY 10001
       (917) 549-5408
       SGHIMESQ@GMAIL.COM